# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA ALICIA SANDOVAL CONTRERAS, | Case No. 1:12-cv-2090-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Martha Alicia Sandoval Contreras ("Plaintiff"), proceeding *pro se* and in forma pauperis, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3).[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2] The

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

[2] On January 4, 2013, the Court entered a scheduling order governing the briefing schedule in this action. (Doc. 6). Pursuant to that order, Plaintiff's opening brief was due to be filed no later than February 4, 2014. (Doc. 6). As of June 2, 2014, Plaintiff had not filed her opening brief. On June 2, 2014, the Court issued an Order directing Plaintiff to show cause, if any, why she had not filed her opening brief. (Doc. 12). After reviewing Plaintiff's

Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

On February 2, 2009, and February 5, 2009, Plaintiff filed her current applications for DIB and SSI, respectively, alleging disability beginning November 13, 2008. AR 141, 148.[3] Plaintiff's applications were denied initially and on reconsideration. AR 82-86. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Michael Haubner held a hearing on May 3, 2011, and issued an order denying benefits on May 19, 2011. AR 26. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on May 3, 2011 in Fresno, California. AR 32-67. Plaintiff appeared and testified with her attorney James Witherow. AR 34. Impartial Vocational Expert ("VE") Jose Chapparo also testified. AR 34. At the hearing, Plaintiff testified that she completed the sixth grade in Mexico. AR 39. She lives with her husband and three children, ages 20, 18, and 9, all of whom were in school. AR 45-46. Plaintiff stated she had a driver's license with no restrictions, and that she drove a truck about twice a week. AR 46.

When asked about her impairments, Plaintiff testified that she primarily suffers from back pain and her diagnoses included degenerative disc disease and a history of depression and insomnia. AR 40. Plaintiff testified that she could lift and carry 8 to 10 pounds, stand for about 10 to 15 minutes at a time, and sit for 2 hours at a time. AR 40-41. She said she could walk for about 30 to 40 minutes before needing to rest. AR 41. In an eight-hour period of time, Plaintiff said she would raise her feet and rest for about 30 minutes. AR 42. She stated that she had difficulty concentrating or paying attention due to pain or fatigue, and that the longest she could pay attention was for about 20 to 30 minutes. AR 42-43. Plaintiff said her doctors told her to lose

---

response to the Order to show cause, the Court directed Plaintiff to file her opening brief no later than July 11, 2014. (Doc. 14). After a further extension of time, Plaintiff filed her opening brief on August 29, 2014.

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

weight by exercising but she could not do it because of her back pain. AR 43-44. She also stated that she was taking a lot of medications which sometimes made it difficult for her to concentrate. AR 65.

When asked about her daily activities, Plaintiff testified that she took care of her own personal needs, and performed household chores such as cooking twice a day, doing the dishes daily, emptying the trash and watering the yard once a week. Plaintiff dusted twice a week, did the laundry once a week, went grocery shopping every two weeks and went shopping for other items once a month. Plaintiff helped her children with their homework for 30 minutes a day, went out to eat once a month, talked on the phone twice a day, talked with her children for about four hours a day, and visited with others outside her home once every two weeks. AR 46-54. Plaintiff also reported that she watched television for about four or five hours a day and read for about a half hour every other day. AR 54. With respect to her past work, Plaintiff said she worked packing and grading oranges in 1996 for about three months, and in 2004, she supervised people at the same packing house. AR 57-58.

Thereafter, the ALJ elicited testimony of vocational expert Jose Chapparo. AR 59. The vocational expert testified that Plaintiff had past relevant work in the medium, unskilled job of an agricultural produce packer but performed some of the work at the heavy level; a light, skilled position of a packinghouse supervisor; and a medium, unskilled position of a hand packager, which was described as being performed at the light level. AR 59. The ALJ asked the vocational expert to assume a hypothetical individual of the same age, education, language, and experience background as Plaintiff who could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for 6 hours in an 8-hour day; and occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 60-61. The vocational expert testified that this individual could perform Plaintiff's past relevant work as a packing house supervisor and as a hand packager as actually performed at the light level, but not per the Dictionary of Occupational Titles (DOT) (or as generally performed). AR 62.

The vocational expert further testified that such an individual could work in the unskilled, light positions of a fast food worker with approximately, 2,000,000 jobs available nationally and about 192,000 in California; cashier II with approximately 1,728,000 jobs and 176,000 in

California; and cafeteria attendant, with approximately 138,000 jobs nationally and 20,000 to 21,000 in California. AR 63.

### Medical Record

The entire medical record was reviewed by the Court. AR 226-432. The medical evidence will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 17-26. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since November 13, 2008. AR 19. Further, the ALJ identified lumbar degenerative disc disease as a severe impairment. AR 19. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 20.

Based on his review of the entire record, the ALJ determined Plaintiff had the residual functional capacity (RFC) to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk for 6 hours in an 8-hour day; and occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 21. The ALJ found Plaintiff could perform her past relevant work as a packing house supervisor and as a hand packager. AR 24. Alternatively, considering Plaintiff's age, (42 years old on her alleged onset date), education, work experience and RFC, the ALJ determined that other jobs existed in significant numbers in the national economy that Plaintiff could perform. AR 25-26. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. *Id.*

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred in: (1) determining her RFC; (2) assessing her credibility; and (3) failing to account for her difficulty with the English language. (Doc. 18).

## DISCUSSION[4]

**1.     The ALJ's RFC Findings**

First, Plaintiff argues that the ALJ erred in making his RFC assessment. Specifically, Plaintiff argues that she suffers from "degenerative disc disease" and because her back pain is "degenerative," light work, or any work, will only worsen her condition. Plaintiff further states that "as time goes by she should not be doing strenuous job tasks that endanger and worsen her spinal health." (Doc. 18 at 2). Plaintiff argues that the ALJ's RFC assessment that concluded that she can return to her past relevant work is flawed because "by not working in the job field where

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

she can be gainfully employed she would remain in less pain and live healthier than she otherwise would be if she works." (Doc. 18 at 4). The Commissioner responds that substantial evidence supports the ALJ's RFC finding that Plaintiff could perform light work with certain limitations on postural activities despite her impairments. (Doc. 19 at 6). The Court agrees with the Commissioner.

A claimant's RFC is what she is capable of doing despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996). An RFC assessment is ultimately an administrative finding reserved to the Commissioner, based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, as well as observations by family members and the claimant's own subjective symptoms. 20 C.F.R. § 404.1545(a)(3). An RFC that does not account for all of a claimant's limitations is defective. *Valentine*, 574 F.3d at 690.

In formulating a claimant's RFC, an ALJ is not required to include limitations that are not supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) "Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been specifically discredited. *Compare, Copeland v. Bowen*, 861 F.2d 536, 541 (9th Cir. 1988) (RFC excluding subjective pain limitations was supported by substantial evidence where ALJ specifically discredited claimant's pain testimony) with *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 (9th Cir. 2007) (RFC excluding subjective pain limitations was not supported by substantial evidence where ALJ did not provide clear and convincing reasons for discrediting claimant's testimony).

Here, after considering the medical evidence, the ALJ agreed with Plaintiff and determined that her "lumbar degenerative disc disease" was a severe impairment. However, relying on the physician opinion evidence, the ALJ found that Plaintiff could perform light work despite her impairments. The ALJ noted that:

> The claimant has complained of low back pain and physicians have diagnosed degenerative disc disease of the lumbar spine. Diagnostic studies revealed degenerative narrowing of the disc interspace and changes of the disc desiccation at the L5-S1 level, with no compression of the L5 nerve roots and no significant spinal stenosis. The diagnostic studies also showed mild disc desiccation at the L2-L3, L3-L4 and L4-L5 levels with no spinal stenosis or neural foraminal encroachment at these levels. Physical examinations revealed moderate tenderness in the paralumbar and lumbosacral region, but no obvious spasms or deformity, a somewhat guarded gait, but no obvious limp or ataxia, and negative straight leg raising tests. Treatment notes show that the claimant was prescribed medication and her back pain improved with medication.

AR 22.

In formulating Plaintiff's RFC, the ALJ adopted the opinion of examining orthopedist, Theodore Georgis, Jr., M.D. Dr. Georgis examined Plaintiff and conducted several clinical tests. After reviewing her lumbar spine MRI and examining Plaintiff in April 2009, Dr. Georgis opined that Plaintiff could perform light work and occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 244-45. Dr. Georgis's examination revealed a negative straight leg raise test, moderate tenderness in the paralumbar and lumbosacral region but no obvious spasms, or deformity, and an unremarkable sensory examination. AR 244. Plaintiff also scored a 5 out of 5 in motor strength in the upper and lower extremities. Dr. Georgis performed his own, independent clinical testing and examination and his findings therefore constituted substantial evidence supporting the ALJ's RFC finding. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant).

Moreover, in relying on Dr. Georgis's opinion, the ALJ noted that Dr. Georgis was board certified in orthopedics, and as a specialist his opinion is generally afforded more weight with respect to issues related to his specialties—i.e. Plaintiff's back pain. *See* C.F.R. § 404.1527(c) (More weight is generally given to an examining source's opinion (versus a non-examining source) and to the opinion of a specialist about issues related to his specialty). In determining Plaintiff's RFC, the ALJ relied on the opinion of Dr. Georgis, which was supported by substantial evidence. "The ALJ was entitled to rely on [the medical expert, consultative examiner] opinion in

formulating his RFC assessment because it was consistent with other independent evidence in the record, including the above-noted diagnostic tests, MRI, and clinical examination.

Other physician opinions in the record also support the ALJ's RFC findings. Substantial weight was also given to the opinions of State agency physicians, Drs. Vu and Hartman, who similarly opined that Plaintiff could perform a range of light work with the postural limitations Dr. Georgis assessed. AR 23. The ALJ found that their opinions were reliable because they were consistent with the overall evidence in the record as well as with Dr. Georgis's opinion. AR 23, 247-48, 314. *See* 20 C.F.R. § 404.1527(c)(4) (The more consistent a medical opinion is with the record as a whole, the more weight it is given); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, non-examining physician can amount to substantial evidence, so long as other evidence in the record supports those findings").

Conversely, the ALJ correctly discounted the conclusory opinion of Plaintiff's treating physician Dr. Haas. In a standardized Tulare County check-box welfare form, Dr. Haas opined that Plaintiff cannot lift or bend. The ALJ gave this opinion little weight as follows:

> This opinion is given little weight because it lacks all signs, symptoms, diagnoses, and other bases. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) where the Court rejected check-blocks forms that lacked bases. *See also Matney v. Sullivan*, 981 F.2d 1016, 1019-20 (9th Cir. 1992) where it was held that an ALJ need not accept a treating physicians opinion if it is conclusory and brief, and unsupported by clinical findings. In addition, the opinion is not consistent with the medical evidence of record (e.g., MRI shows degenerative disc disease, but it also notes that there is no apparent nerve root compression or spinal stenosis; see also negative bilateral lower extremity electrodiagnostic studies. Additionally, claimant testified that she can lift and carry 10 pounds which is contrary to Exhibit 20F's limitation of "no lifting"). Lastly, the opinion of Dr. Haas is not consistent with the opinion of either examining physician who is board certified in orthopedics or the State agency medical consultants, all of whom opined that the claimant is capable of performing a restricted range of light work. Based on the reasons set forth above, I accord very little weight to the opinion of Dr. Haas.

AR 23.

The ALJ considered the check-box form Dr. Haas completed, and he reasonably accorded it little weight. AR 22-23. As the ALJ noted, Dr. Haas completed a standardized Tulare County welfare form and opined that Plaintiff could not lift or bend and needed to change position often. AR 22, 413. However, the ALJ pointed out that the form lacked any evidence of clinical findings.

An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). While a treating physician's opinion can be entitled to greater weight, an ALJ may reject or discount a treating physician's opinion if the opinion was not based on objective medical evidence, inconsistent with the physician's own medical records, or dramatically more restrictive than the opinion of any other medical source. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the single check-box form completed by Dr. Haas is precisely the type of conclusory statement afforded no special weight in accordance with the Social Security regulations. Dr. Haas made very little observations beyond stating that Plaintiff cannot lift or bend and she "needs to be able to change positions often." AR 413. Dr. Haas did not include any diagnoses, nor did he provide any explanation, treatment records, or any other support for his opinion that Plaintiff cannot lift or bend. AR 413. *See Tonapetyan*, 242 F.3d at 1149 (ALJ properly rejected the treating physician's opinion because it was "unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [claimant's] alleged conditions"). Furthermore, inconsistent with his other assessments, Dr. Haas indicated that Plaintiff's condition does not prevent her from providing care for her children in her home, nor does it require someone to provide her in home care. The ALJ noted that Dr. Haas's opinion was overall inconsistent and inconsistent with Plaintiff's own statements and testimony that she could lift up to 10 pounds. AR 22-23, 40.

Ultimately, Plaintiff's argument that the ALJ improperly assessed her RFC that Plaintiff could perform light work with certain limitations is wholly unpersuasive. As set forth above, three separate physicians opined that despite her impairments Plaintiff maintained the ability to perform light work. The ALJ was justified in rejecting the sole opinion from Dr. Haas indicating that Plaintiff was unable to do any lifting or bending.

**2.    The ALJ Included All of Plaintiff's Limitations in his RFC Assessment**

Plaintiff argues her subjective complaints regarding the side effects of her medication should have been included in her RFC. According to Plaintiff, the ALJ did not consider the side

9

effects of her medication which allegedly left her disoriented, caused dizziness and confusion which affected her ability to concentrate, and had a minimal effect on lessening her pain. (Doc. 18 at 3). She argues that this would affect her job performance and be hazardous in a work environment involving manual labor and factory machinery. (Doc. 18 at 3).

As seen below, the ALJ properly discounted Plaintiff's subjective symptom testimony. This decision applies equally to Plaintiff's testimony concerning the effects of her medication. Indeed, the record does not show any evidence of side effects beyond Plaintiff's subjective statements to that effect. AR 60, 65, 220. *See Thomas*, 278 F.3d at 960 (noting that the claimant "offers no objective evidence that her medications affected her concentration or caused dizziness.") The only evidence regarding these symptoms is Plaintiff's own statements to her doctor in September 2010, which the ALJ properly rejected. In rejecting Plaintiff's subjective symptom testimony, the ALJ noted that Plaintiff's conditions were improving with her medication and the ALJ observed that Plaintiff performed numerous activities of daily living, further indicating that Plaintiff did not experience any significant limitations in her daily functioning due to the side effects of her medication or otherwise. AR 24. Here, since the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony, the ALJ's rejection of Plaintiff's subjective reports of side effects was proper.

**3.     The ALJ Provided Sufficient Reasons to Reject Plaintiff's Subjective Pain Testimony**

Next, Plaintiff argues that the ALJ should have credited her subjective symptom testimony that she cannot work due to her severe pain. (Doc. 18 at 3).

To reject a claimant's symptom testimony—absent affirmative evidence of malingering, and assuming his impairments could reasonably give rise to his reported symptoms—the ALJ must make specific credibility findings supported by clear and convincing reasons. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Schow v. Astrue*, 272 F. App'x 647, 654 (9th Cir. 2008). An ALJ may engage in ordinary techniques of assessing credibility. *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005). An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas*, 278 F.3d at 958 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). Credibility determinations "are the province of

the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which are supported by substantial evidence in the record, the decision should not be second-guessed. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

In this case, substantial evidence supports the ALJ's finding that Plaintiff's statements and allegations were not entirely credible. The ALJ provided a valid basis for finding Plaintiff not fully credible, and his reasons are supported by substantial evidence. AR 19-24. First, the ALJ noted that the objective medical evidence did not support Plaintiff's claims of disabling impairments. AR 21-24. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section . . . .Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques . . . must be considered"). Plaintiff's physical examinations revealed moderate tenderness in her back, but no obvious spasms or deformity, a somewhat guarded gait but no obvious limp, and negative straight leg raise test. AR 22, 243-44. In September 2010, Dr. Mensink reported that Plaintiff's EMG/nerve conduction studies were normal, she had no annular tears as pain generators, and that her flexion/extension x-rays showed no instability. AR 355. Furthermore, three different physicians—Dr. Georgis, Dr. Vu, and Dr. Hartman—opined that Plaintiff could perform a range of light work, indicating she was not as limited as alleged. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (finding that a valid specific reason for rejecting Plaintiff's excess pain complaints, among others, was doctor's opinion that plaintiff could perform sedentary work). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Here, the objective evidence did not support Plaintiff's claims of disabling impairments.

The ALJ also observed that Plaintiff's impairments were improving with medication. AR 22, 374. In March 2011, Plaintiff said her "[b]ack pain improved with meloxicam." AR 374. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be

controlled effectively with medication are not disabling for the purpose of considering eligibility for SSI benefits."). The ALJ was entitled to reasonably conclude that Plaintiff's improvement discredited her subjective complaints. *See Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective complaints by citing physician's report that mental symptoms improved with medication). In addition, Dr. Mensink noted that while Plaintiff wanted surgery, Dr. Mensink indicated that surgery was not advisable and instead suggested conservative therapy as the appropriate course of treatment. AR 355. *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 96-7p (An "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . . "); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly noted that the doctor prescribed only "conservative treatment," suggesting a "lower level of both pain and functional limitation").

The ALJ also noted inconsistencies between Plaintiff's reported daily activities and her contention of total disability. AR 24. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ may consider whether the claimant's daily activities are inconsistent with the alleged symptoms) (citations omitted). Plaintiff reported that she had no problems attending to her personal care, preparing meals, and enjoyed spending time with friends. Plaintiff testified that she shopped, cooked twice a day, and performed significant household chores both inside and outside of the house. *See Burch*, 400 F.3d at 680-81 (Claimant's ability to care for her own personal needs, cook, clean, shop, manage her finances, and interact with her nephew and boyfriend suggested she was quite functional); *Thomas*, 278 F.3d at 958-59 (holding that the ALJ's finding that claimant could perform various household chores such as cooking, laundry, washing dishes, and shopping constituted a specific, clear and convincing reason, among others, for discounting claimant's testimony). Plaintiff also reported that she watched television for about four or five hours a day and read for about a half hour every other day. AR 24, 54. Everyday activities may be grounds for discrediting a claimant's testimony "to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112. The ALJ appropriately considered Plaintiff's admitted activities of daily living, which included daily care, daily activities, and interaction with others. Plaintiff testified to performing such a variety of activities, and doing so

with a frequency and to such an extent, that it was inconsistent with Plaintiff's claims of inability to perform light work. AR 24. *See Molina*, 674 F.3d at 1113. Furthermore, the ALJ noted that although Plaintiff had a decent work history with 10 years of substantial gainful activity, she only had 10 full years of substantial gainful activity in her life. AR 24. The ALJ found her minimal total work history further reduced her credibility. AR 24. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (noting that the ALJ is entitled to "draw inferences 'logically flowing from the evidence'") (citation omitted).

The Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

**4.    Plaintiff's Inability to Speak English**

Finally, Plaintiff contends that the ALJ failed to account for her inability to effectively communicate in English. (Doc. 18 at 5). Plaintiff argues that although she understands and speaks English, her English capabilities are minimal, and she therefore had difficulties articulating herself which caused miscommunication issues in her case process. (Doc. 18 at 3-4).

With respect to the category of "[i]nability to communicate in English," the regulations provide that, "[b]ecause English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job . . . . Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do." 20 C.F.R. § 416.964(b)(5).

Plaintiff fails to provide any evidence that her limited English language skills prejudiced her in any way, or that this caused any reversible error in the ALJ's decision. *See Molina*, 674 F.3d at 1111 ( "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination'") (*quoting Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Even if the Court were persuaded that the ALJ erred in failing to consider Plaintiff's limited English speaking abilities, the error was harmless. Plaintiff did not require the assistance of an

interpreter at the hearing. Additionally, the record demonstrates that Plaintiff was able to respond to questions by her physicians in English and she stated that there was no need for an interpreter to be present at her appointments. AR 246. Specifically, Plaintiff's physician, Dr. Prince, noted in his report that no interpreter was required at Plaintiff's appointment because Plaintiff was able to speak English. AR 315. Plaintiff also appears to have been able to complete her social security forms in English on her own. AR 32-67, 174-84. *See, e.g., Du v. Astrue*, 475 Fed. Appx. 127, 128 (9th Cir. 2012) (unpublished) (finding that claimant's argument that he should have been provided an interpreter failed because he did not show prejudice from not having an interpreter). The ALJ is limited to the record presented, and could not consider the effects of Plaintiff's limited English language skills without evidence demonstrating that deficiency in the record. Therefore, the ALJ properly considered Plaintiff's ability to speak English.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff Martha Alicia Sandoval Contreras.

IT IS SO ORDERED.

Dated: **November 3, 2014**          /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE